FILED'10 NOV 23 16:41 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RANDY HUTTON,

                     Plaintiff,

        v.

JACKSON COUNTY, a Political Subdivsion
of the State of Oregon, and JOHN VIAL,

                Defendants.

Case Number 09-3090-CL

**AMENDED ORDER**

CLARKE, Magistrate Judge.

      Plaintiff originally filed this action against defendant Jackson County ("the County") on

January 9, 2009, in Jackson County Circuit Court for the state of Oregon, <u>Randy Hutton v.</u>

<u>Jackson County</u>, Civil Case No. 09-0419-L3, alleging claims of wrongful discharge, age

discrimination, and whistleblowing (ORS 659A.203). On or about October 14, 2009, plaintiff

filed an amended complaint, adding defendant John Vial ("Vial") as an individual defendant, and

alleging a 42 U.S.C. § 1983 claim for violation of his First and Fifth Amendment rights, and

supplemental state claims for whistleblowing (ORS 659A.203), wrongful discharge, and breach

of contract. Plaintiff seeks economic damages, non-economic damages, and attorney's fees and

costs. Defendant timely filed a Notice of Removal to this court on October 15, 2009. This court

Page 1 - AMENDED ORDER

has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  The parties have executed

written consents to entry of judgment by a magistrate judge (#10).  Before the court is defendants'

motion for summary judgment (#16).  For the reasons set forth below, defendants' motion is

granted in its entirety.

## BACKGROUND

Construing the facts in the light most favorable to the non-movant, the record reveals the

following:[1]

In 1976, Plaintiff was hired to fill a non-union supervisory position with the County's

Parks and Recreation Department.  The County did not have a written at-will policy at that time.

In the absence of any clear policy to the contrary, Neil Ledward, Director of Parks and Recreation

from 1961 to 1991, and plaintiff's supervisor Larry Lloyd, Superintendent of Parks from 1973 to

1993, believed that employees could only be terminated for cause.  It is possible that one or both

of them told plaintiff he could only be terminated for cause when he was hired.  Throughout the

duration of his employment, plaintiff subjectively believed he could only be terminated for cause.

On December 7, 2000, the County promulgated Policy #5-42, which pronounced that, in

accordance with state law, all employees of the County were at-will employees, regardless of an

employee's probationary or regular status.  On January 4, 2001, the County's Human Resources

Department issued an inter-office memo addressing, in part, Policy #5-42, noting that it was

signed by "the Board" and adopted the previous month, and requiring that all current

---

[1]Only those facts pertinent to the motion and necessary for an understanding of the
Court's ruling are included.  To the extent facts are included as to which objection has been
made, the objection is overruled; otherwise, the objections made in plaintiff's motion to strike
(#32) are moot.

management employees submit a signed copy by January 31, 2001. Plaintiff signed the policy, recording his protest on the document below his signature.

In 2003, plaintiff was promoted to Parks Program Manager. In that position, plaintiff reported directly to Paul Korbulic, Director of the County's Roads and Parks Department, and Gerry Douglas, the Deputy Director. In February 2007, J. Domis succeeded Douglas as Deputy Director. On July 1, 2007, budget shortfalls caused the County to discontinue plaintiff's "take home" vehicle privileges, which he had enjoyed since 1976, and restricted the use of County vehicles to daytime use for official business only. On November 26, 2007, Domis issued plaintiff a written reprimand for using a County vehicle to drive home for lunch, and cautioned that as a manager he was expected to set an example for the public and his co-workers.

On March 3, 2008, defendant Vial succeeded Korbulic as Director. Vial conducted training and held management team meetings, which plaintiff attended, four times between April 22 and May 29 of 2008, during which the proper use of County vehicles was addressed. Plaintiff challenged the policy and expressed his disagreement with it during these meetings. On July 2, 2008, Vial issued plaintiff a written reprimand for violating Policy # 8-02, which prohibits county employees from making or receiving calls while driving, after plaintiff received a citation for running a red light and talking on his cell phone while driving a County vehicle.

As Parks Program Manager, plaintiff was responsible for the County's entire parks program, including the Cantrall-Buckley Park ("C-B Park"). Pursuant to a 2004 operating agreement, C-B Park was managed by the Greater Applegate Community Development Corporation ("GACDC"), a non-profit corporation. In early 2007, at GACDC's request, the County applied for and received two Oregon State Parks grants totaling $253,225 for

improvements to C-B Park.  In August 2007, the County and GACDC entered into an agreement

calling for GACDC to raise $203,225 and for the County to contribute an additional $50,000 to

cover the total costs of the projects, and setting a completion date of December 31, 2008.  Over

time, plaintiff's relationship with GACDC and its officers became tense, due at least in part to his

increasing concerns with the manner in which GACDC was managing the grant funds and

perception that GACDC was violating multiple terms of the 2004 operating agreement.  Plaintiff,

Vial, and Domis discussed these concerns in several meetings during the spring and summer of

2008.  On June 3, 2008, Domis and Vial requested that County Auditor's Office conduct an audit

of the C-B Park grant projects.  Plaintiff was not informed of the request.

　　　　In mid-November 2008 Tanya Baize ("Baize"), an auditor with the Auditor's Office,

phoned plaintiff and requested background information regarding the C-B Park projects.  On

November 19, 2008, plaintiff sent Baize a 3 page memorandum describing the problems he

perceived regarding GACDC's management of the state grant funds and C-B Park generally, and

attached eight supporting documents.  On November 24, 2008, Vial confronted plaintiff about

the memorandum, which plaintiff had submitted to Baize without informing Vial.  Vial told

plaintiff he was "going to have to make some changes" if he did not see improvements in

plaintiff's performance.

　　　　On December 4, 2008, Vial and Domis met with plaintiff to discuss a written complaint

from GACDC dated November 25, 2008, accusing plaintiff of removing firewood from C-B Park

without payment or permission.  Plaintiff admitted that he removed wood from the park, which

he believed was permissible, but also admitted he exercised poor judgment in doing so

considering the contentious nature of his relationship with GACDC.  During this meeting, Vial

Page 4 - AMENDED ORDER

and Domis also learned that earlier that day, plaintiff had stopped for a personal doctor's appointment while driving a County vehicle to Emigrant Lake to meet with another County employee. Plaintiff felt this conduct was permissible since the personal stop was incidental to the job-related trip. Domis and Vial, however, viewed these two incidents as part of a larger pattern of insubordination and misconduct. Accordingly, plaintiff's employment was terminated on December 10, 2008.

## LEGAL STANDARD

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All

reasonable inferences are drawn in favor of the non-movant. Gibson v. Cnty. of Washoe, 290

F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then

shifts to the opposing party to present specific facts which show there is a genuine issue for trial.

Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); *see*

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).  Summary judgment should be

granted for the movant, if appropriate, in the absence of any significant probative evidence

tending to support the opposing party's theory of the case.  Fed. R. Civ. P. 56(e); THI-Hawaii,

Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v.

Cities Serv. Co., 391 U.S. 253, 290 (1968).  Conclusory allegations, unsupported by factual

material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d

1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by affidavit or as otherwise

provided by Rule 56, designate specific facts which show there is a genuine issue for trial.

Devereaux, 263 F.3d at 1076.

## DISCUSSION

Because plaintiff's claims are all interrelated and hinge principally on the determination of

whether plaintiff's November 2008 memorandum constitutes protected activity, the court begins

its analysis with plaintiff's § 1983 claim.

## I. Plaintiff's Fourth Claim:  42 U.S.C. § 1983

Plaintiff alleges a claim under § 1983 on two constitutional bases:  for violation of his

First Amendment rights of free speech, and for violation of his due process rights.  The court

addresses each claim in turn.

Page 6 - AMENDED ORDER

**A. 42 U.S.C. § 1983 - First Amendment Violation**

Plaintiff claims he was terminated in retaliation for reporting mismanagement of public funds by a public agency. Plaintiff brings this claim against both defendants.

To establish a claim under § 1983, plaintiff must prove both that he was deprived of an existing federal right and that the deprivation occurred under color of state law. *See* West v. Atkins, 487 U.S. 42, 48 (1988). In order to determine whether a government employee's free speech rights have been violated, the court must follow a five step sequential inquiry. Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009), *cert. denied*, __ U.S. __, 130 S.Ct. 1047 (2010). The plaintiff must first prove that (1) he spoke on a matter of public concern; (2) he spoke as a private citizen, not as a public employee; and (3) his protected speech was a substantial or motivating factor for an adverse employment action against him by his public employer. Id. at 1070-71. If the plaintiff proves each of these three elements, the burden shifts to the public employer to show (4) that the employer had an adequate justification for treating the employee differently from other members of the general public, or, in the alternative, (5) that the employer would have reached the same adverse employment decision even in the absence of the employee's protected conduct. Id. at 1071-72.

**1. Defendant John Vial**

Defendants apparently concede that plaintiff's November 2008 involved a matter of public concern, but argue that plaintiff's claim fails because (1) plaintiff's memorandum was sent as part of his job duties, thus he acted in his capacity as a public employee, not a private citizen; (2) plaintiff's memorandum was not a substantial or motivating factor in the decision to terminate his employment; and (3) defendants would have reached the same decision to terminate plaintiff's

employment even if he had never written the memorandum.

### i. Plaintiff's memorandum is not protected speech

At the second step of the § 1983 First Amendment violation analysis, plaintiff must prove that his speech was spoken in his capacity as a private citizen, and not as a public employee. Eng, 552 F.3d at 1071. Where an employee has an official duty to speak, or his speech is the product of performing the tasks the employee is paid to perform, the speech is spoken in his capacity as a public employee, not a private citizen. Id. The scope and content of an employee's job responsibilities is a question of fact; however, "the 'ultimate constitutional significance of the facts found' is a question of law." Id. (quoting Posey v. Lake Pend Oreille School Dist. No. 84, 546 F.3d 1121, 1129-30 (9th Cir. 2008)).

The parties agree that in his role as Parks Program Manager, plaintiff was responsible for overseeing all parks in the County, including C-B Park. Plaintiff admits he monitored GACDC's management of the state grant funds, and its management of C-B Park generally, as part of his job duties. Furthermore, plaintiff admits that the Auditor's Office contacted him for information regarding the alleged mismanagement by GACDC because he held the contracts and all of the paperwork regarding the two planned improvement projects at C-B Park. Finally, plaintiff admits that he sent his November 2008 memorandum to Baize as "a course of [his] job duty."

The undisputed facts show that plaintiff's November 2008 memorandum was the product of performing the tasks he was paid to perform as an employee of the County. The memorandum is therefore "speech" spoken in his capacity as a public employee, not a private citizen, and is not protected under the First Amendment. Plaintiff's claim therefore fails at the second step of the five-step sequential analysis.

Page 8 - AMENDED ORDER

### ii. Whether plaintiff's memorandum was a "substantial or motivating" factor

At the third step of the § 1983 First Amendment violation analysis, plaintiff must prove that his protected speech was a "substantial or motivating" factor in the adverse action taken against him by the defendant. Eng, 552 F.3d at 1071. Whether plaintiff's constitutionally protected speech was a motivating factor in defendants' decision to terminate his employment is purely a question of fact. Id.

Here, plaintiff has failed to show that his memorandum was constitutionally protected speech, therefore the court need not reach the question of whether defendants' decision to terminate his employment was motivated in whole or in part by the memorandum.

### iii. Whether defendants would have made the same decision to terminate plaintiff had he not written the memorandum

Where a plaintiff has borne his burden of proof on the first three Eng elements, and the defendant cannot show that the state's legitimate administrative interest outweigh the employee's First Amendment rights, the defendant may still avoid liability by showing that the employee's protected speech was not a "but-for" cause of the adverse employment action. Eng, 552 F.3d at 1072 (citing Mt. Health City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)). "The Mt. Healthy but-for causation inquiry is purely a question of fact." Id. (citing Wagle v. Murray, 550 F.2d 401, 403 (9th Cir. 1977) (per curiam)).

Here, plaintiff has failed to show that his memorandum was constitutionally protected speech, therefore the court need not reach the question of whether defendants would have reached the same decision to terminate his employment even if he had never written his November 2008 memorandum.

Page 9 - AMENDED ORDER

### 2. Defendant Jackson County

A municipality may not be held liable under § 1983 on a *respondeat superior* theory; rather, the constitutional tort must have been committed pursuant to a municipal policy. Crowe v. Cnty. of San Diego, 608 F.3d 406, 445 (9th Cir. 2010) (*citing* Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978)). To establish municipal liability under § 1983, plaintiff must show: (1) a County employee violated his constitutional rights; (2) the County has a custom or policy; (3) that policy amounts to deliberate indifference to his constitutional rights; and (4) this custom or policy was the moving force behind the employee's violation of his constitutional rights. Burke v. Cnty. of Alameda, 586 F.3d 725, 734 (9th Cir. 2009) (internal citation and quotation marks omitted).

Defendants argue plaintiff's First Amendment-based § 1983 claim against the County is barred by plaintiff's own admission that the County did not have a policy, practice or custom of retaliating against employees who exercised their free speech rights. Plaintiff offers no argument in response. In any event, the court has already found that defendant Vial did not violate plaintiff's First Amendment rights, above. Even if defendant Vial *had* violated plaintiff's constitutional rights, plaintiff would still need to show the existence of a County custom or policy to prevail against the County. Plaintiff has failed to prove either a violation or the existence of a policy. Therefore, his § 1983 claim against the County fails as a matter of law.

### Conclusion

Plaintiff's speech in his November 2008 memorandum was not made as a private citizen but as a public employee. Accordingly, plaintiff's speech is not protected under the First Amendment. Plaintiff has failed to prove either a violation of his constitutional rights or the

existence of a County policy endorsing or tolerating such violations.  Therefore, defendants' motion for summary judgment as to plaintiff's fourth claim is GRANTED and plaintiff's First Amendment claim is dismissed as to all defendants.

**B.      42 U.S.C. § 1983 - Due Process violation**

Plaintiff argues that Jackson County did not have a written "at will" policy at the time he was hired, that he was told by his supervisors he could only be fired "for cause," and therefore the promulgation of Policy #5-42 in December of 2000 changed his employment status from termination only "for cause" to termination "at will" without consideration, thereby depriving him of his property interest in continued public employment in violation of his due process rights.  This claim is brought against Jackson County.

**1.  Fifth Amendment Claim**

Plaintiff expressly invokes the Fifth Amendment as the source of his constitutional due process rights.  This claim is without merit.  The Due Process Clause of the Fifth Amendment applies to and restricts only the federal government.  Geneva Towers Tenants Org. v. Federated Mortg. Investors, 504 F.2d 483, 487 (9th Cir. 1974) (*citing* Pub. Utilities Comm'n v. Pollack, 343 U.S. 451, 461 (1952); U.S. v. Davis, 482 F.2d 893, 897 n. 3 (9th Cir. 1973)); *see also* Plumeau v. Yamhill Cnty. School Dist. No. 40, 907 F.Supp. 1423, 1435 (D. Or. 1995) (due process claim brought against school district under Fifth and Fourteenth Amendments properly analyzed only under the Fourteenth Amendment).  No federal actors were involved in any of the actions on which plaintiff's claims are asserted, therefore he cannot assert a due process violation claim under the Fifth Amendment.

//

Page 11 - AMENDED ORDER

### 2. Fourteenth Amendment

The court liberally interprets plaintiff's complaint as attempting to assert a due process violation under the Fourteenth Amendment. In order to be entitled to the protection of the Fourteenth Amendment, plaintiff must demonstrate that defendants' action or inaction deprived him of a property interest. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 538 (1985); Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 82 (1978). A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the position. Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Under Oregon law, public employee's rights arise solely from statutes and regulations; property interests for public employees cannot arise solely from an implied or express contract of employment absent some underlying statute or regulation. Brady v. Gebbie, 859 F.2d 1543, 1549 (9th Cir. 1988) (*citing* Papadopoulos v. Bd. of Higher Ed., 14 Or. App. 130, 168-69, *rev. denied* (1973), *cert. denied* 417 U.S. 919 (1974)); Harrington v. City of Portland, 677 F.Supp. 1491, 1499 (D. Or. 1987).

Defendant argues it is irrelevant whether the County had a written "at will" termination policy prior to December 2000, first because the century-old default standard in Oregon is "at will," and second because the "at will" standard was codified by the Oregon legislature in 1953 with the enactment and adoption of ORS. 204.601. Therefore, without more, the reference to Policy #5-42 as a "new" policy in the County's interoffice memorandum is irrelevant, as is plaintiff's subjective belief that he could be fired only "for cause."

In Oregon, county civil service is mandatory for counties with a population over 500,000, but smaller counties must elect into it. ORS 241.020, 241.006. In counties which have not

elected to adopt a civil service system under ORS Ch. 241, employment is governed by ORS 204.601, which provides that employees serve at the pleasure at the appointing official. Papadopoulos, 14 Or. App. at 167-68 (public employees whose employment is governed by ORS 204.601 enjoy no job security); Schlichting v. Bergstrom, 13 Or. App. 562, 555-56 (1973); see Brady, 859 F.2d at 1548-50.  A public employee whose position is "at will" has no constitutionally protected property right.  Lawson v. Umatilla Cnty., 139 F.3d 690, 692-93 (1998) (citing Portman, 995 F.2d at 904); Machunze v. Chemeketa Cmty. Coll., 106 Or. App. 707, 715 (1991); Albertson v. Stewart, No. CIV 04-3097-CO, 2007 WL 128946, at * 6 (D. Or. Jan. 16, 2007).

Jackson County has a population of less than 500,000.[2]  Defendants contend, and plaintiff does not dispute, that Jackson County has not adopted a civil service system and is therefore governed by ORS 204.601.  Thus by statute, plaintiff was as an at-will employee with no constitutionally protected property interest in continued public employment, unless he can show that the County created such an interest, whether by ordinance, regulation, personnel policy, or other means.  See, e.g., Maben v. Klamath Cnty., 54 Or. App. 799, 802-803 (1981), amended by 57 Or. App. 730 (1982) (in county governed by ORS 204.601, summary judgment precluded where employee handbook designated plaintiffs' status as "permanent," creating genuine issue of material fact as to whether provision was intended to be part of the original employment contract and whether employee could be terminated only for cause).  Plaintiff has failed to submit any such evidence, and instead relies solely on the alleged implied-in-fact employment contract as

---

[2] The court takes judicial notice of this fact.  See http://www.co.jackson.or.us/Page.asp?NavID=131 (last visited November 18, 2010)

creating his property interest.  This is insufficient under Oregon law to create a constitutionally

protected property right.  Plaintiff therefore fails to state a § 1983 claim for due process violation

under the Fourteenth Amendment.

### Conclusion

Therefore, defendants motion for summary judgment as to plaintiff's § 1983 claim is

GRANTED, and plaintiff's fourth claim is dismissed.

## II.  Plaintiff's Second Claim:  ORS 659A.203 - Whistleblowing

Plaintiff alleges defendants violated Oregon's whistleblowing statute, ORS 659A.203, by

terminating him in retaliation for reporting the mismanagement of state grant funds by GACDC

in his November 2008 memorandum the County Auditor's Office, without first informing Vial of

the request and allowing Vial the opportunity to review the memorandum.

Under Oregon law, a public employer engages in unlawful employment practices by

discouraging an employee from complaining about violations of law, or requiring the employee

to give notice before complaining.  Huber v. Or. Dept. of Ed., 235 Or. App. 230, 240 (2010);

ORS 659A.203.[3]  Moreover, the employer engages in an unlawful employment practice if it

---

[3] ORS 659A.203 provides, in pertinent part:

(1) . . . [I]t is an unlawful employment practice for any public employer to:
. . .
(b)  Prohibit any employee from disclosing, or take or threaten to take disciplinary
action against an employee for the disclosure of any information that the employee
reasonably believes is evidence of:
    (A)  A violation of any federal or state law, rule or regulation by the state,
agency or political subdivision;
    (B)  Mismanagement, gross waste of funds or abuse of authority or
substantial and specific danger to public health and safety resulting from action of
the state, agency or political subdivision; . . .
. . .

characterizes the employee's resistance to such discouragement or notice requirement as "insubordination" and subsequently disciplines the employee for that "insubordination." Id. However, a public employer may lawfully require that employees inform their supervisor about official requests for information. ORS 659A.206(1). Courts in this District have held that to prevail in a whistleblowing claim, plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment decision; and (3) a causal link exists between the activity and the employment decision, that is, he suffered the adverse employment decision because he engaged in the protected activity. See Clarke v. Multnomah Cnty., Civ. No. 06-229-HU, 2007 WL 915175, at * 14 (D. Or. Mar. 23, 2007), aff'd, 303 Fed. Appx. 512 (9th Cir. 2008).

Defendants argue that plaintiff's claim fails because: (1) the memorandum does not contain any statement of wrongdoing within the meaning of ORS 659A.203, (2) the memorandum is not a "disclosure" under ORS 659A.203; and (3) plaintiff cannot show a causal link between his November 2008 memorandum and his termination.

## A. Plaintiff's memorandum does not constitute "protected activity" under ORS 659A.203

To prevail in his claim under ORS 659A.203, plaintiff must first show he was engaged in activity protected by the statute. To satisfy this element, plaintiff relies exclusively on his November 2008 memorandum. The court finds plaintiff's memorandum is not "protected activity" within the meaning of ORS 659A.203 for the following reasons.

---

(c)  Require any employee to give notice prior to making any disclosure or engaging in any discussion described in this section, except as allowed in ORS 659A.206(1); or
(d)  Discourage, restrain, dissuade, coerce, prevent, or otherwise interfere with disclosure or discussions described in this section.

### 1. Plaintiff's memorandum did not report "mismanagement"

Under ORS 659A.203, a claim alleging "mismanagement" must involve more than mere routine complaints about a public employer's policies; rather, such a claim must relate to "serious agency misconduct having the effect of actually or potentially undermining the agency's ability to fulfill its public mission." Bjurstrom v. Oregon Lottery, 120 P.3d 1235, 1241 (2005).

Plaintiff's allegations of mismanagement are limited to the manner in which GACDC used two state grants obtained by the County at GACDC's request to fund two improvement projects for C-B Park. There is no allegation that defendants colluded with, approved or, or encouraged the manner in which GACDC managed the funds. Neither party argues that GACDC is an agent of the County and therefore its actions in allegedly mismanaging the funds at issue are attributable to the County. To the extent that GACDC was an agent of the County by virtue of the 2004 operating agreement, whereby the County contracted with GACDC for the management and operation of C-B Park, there is no allegation that the County has a pattern or practice of negligently entrusting state grant funds to third-party agents contracted to manage and operate County parks. Rather, the facts show that defendants imposed conditions on GACDC's receipt of the state grant funds, that defendants continued to monitor the manner in which GACDC managed these funds after distributing them to GACDC, and that defendants promptly requested an audit upon learning that the funds were being mismanaged. On these facts, the court agrees plaintiff's memorandum did not report wrongdoing within the meaning of ORS 659A.203.

### 2. Plaintiff's memorandum is not a "disclosure"

A "disclosure" under the whistleblowing statute is "a report of wrongdoing" and includes a report of wrongdoing within an agency or department. Shultz v. Multnomah Cnty., No. 08-CV-

Page 16 - AMENDED ORDER

886-BR, 2009 WL 1476689, at * 13 (D. Or. May 27, 2009) (*quoting* <u>Bjurstrom</u>, 120 P.3d at 1239); <u>Clarke</u>, 2007 WL 915175, at * 14; *see* OAR 839-010-0010(4).  The District of Oregon has found that "the disclosure must pertain to the underlying conduct in order to be protected activity rather than to the asserted fact of its unlawfulness or impropriety." <u>Shultz</u>, 2009 WL 1476689, at * 14 (*citing* <u>Clarke</u>, 2007 WL 915175, at *15).  In plain English, the disclosure must reveal previously unknown conduct in order to be protected activity; it is insufficient to merely identify or label conduct which is known to have occurred as either unlawful or improper.  In the absence of any Oregon case law identifying to whom the disclosure must be made, the District of Oregon has determined that "a disclosure is protected only if it is made to a person who was previously unaware of the information, meaning someone in a supervisory position, other than the wrongdoer himself." <u>Shultz</u>, 2009 WL 1476689, at * 13; (applying the standards governing the federal Whistleblower Act of 1989).

It is undisputed that plaintiff disclosed and discussed his concerns regarding GACDC to his supervisors, Domis and Vial, in the spring and summer of 2008.  It appears that neither Domis nor Vial knew about GACDC's alleged misconduct prior to plaintiff bringing his concerns to them, thus, plaintiff disclosed GACDC's misconduct within the meaning of ORS 659A.203 when he told them about it.  However, the November 2008 memorandum is *not* a disclosure for two reasons.  First, the memorandum did not contain any new information; it merely reiterated the information plaintiff had already disclosed to Domis and Vial in the spring and summer of 2008.  Second, there is no indication that Baize, the auditor to whom plaintiff submitted his memorandum, is a person in a "supervisory position."  Third, even if Baize is deemed a person in a "supervisory position," at the time she contacted plaintiff for information, she already knew

Page 17 - AMENDED ORDER

about GACDC's misconduct, because that had been revealed to the Auditor's Office by Domis and Vial when they placed the audit request. Thus, while plaintiff's memorandum may have provided an additional level of detail, it did not "disclose" any conduct that the Auditor's Office was unaware of.

**Conclusion**

Plaintiff has failed to show both that his memorandum reported "wrongdoing," and that his memorandum is a "disclosure," within the meaning of ORS 659A.203. Therefore, his memorandum was not protected activity and may not support a claim for retaliation in violation of ORS 659A.203.

**B. Whether plaintiff can show that a "causal connection" exists between the memorandum and his termination**

Plaintiff has failed to prove that his memorandum constitutes protected activity within the meaning of ORS 659A.203, therefore any causal connection that exists between it an his termination lacks legal significance.

However, to the extent plaintiff argues that Vial's statement that he was "going to have to make some changes" if he did not see improvements in plaintiff's performance supports the inference that he was terminated for the information he disclosed in his memorandum, the court notes it cannot agree.

The undisputed facts show that when plaintiff informed Vial of GACDC's alleged mismanagement, Vial did not attempt to discourage plaintiff from pursuing the matter. To the contrary, Vial took action. Vial requested that the County Auditor's Office conduct an audit, and when plaintiff opposed the audit, Vial allayed plaintiff's fears and continued to pursue the matter. As plaintiff's supervisor, Vial knew that plaintiff was responsible for monitoring GACDC's

Page 18 - AMENDED ORDER

management of C-B Park, and that plaintiff held all of the contracts and other documents related

GACDC and C-B Park. Moreover, Vial knew it was plaintiff who discovered the alleged

mismanagement. By necessity, Vial knew that the Auditor's Office would contact plaintiff

regarding the audit. There is no indication that Vial attempted to impose conditions on whether

or when plaintiff could speak to the Auditor's Office, or in any other way attempted to discourage

plaintiff"s concerns.

On these facts, Vial's statement can only reasonably be understood as an admonition that

plaintiff should notify him of official requests for information and allow him the opportunity to

assist in crafting the response, a requirement which Vial could lawfully impose. Thus to the

extent Vial's statement supports the inference that the decision to terminate plaintiff was

motivated in whole or in part by plaintiff's memorandum, it does not support the inference of

unlawful retaliatory animus, but rather supports defendants' argument that plaintiff was

terminated for lawful reasons, that is, his practice of disregarding County policy.

**Conclusion**

Plaintiff's November 2008 memorandum is neither a report of "wrongdoing" nor a

"disclosure" within the meaning of ORS 659A.203, and is thus not protected activity entitled to

the protections of the statute. Therefore, defendants' motion for summary judgment as to

plaintiff's whistleblowing claim is GRANTED, and plaintiff's second claim is dismissed.

**III.  Plaintiff's Third Claim:  Wrongful discharge**

Plaintiff claims he was wrongfully terminated for reporting mismanagement of public

funds by a public agency. This claim can only be brought against defendant Jackson County as

plaintiff's employer. Schram v. Albertson's Inc., 146 Or. App. 415, 426 (1997). To allege a

Page 19 - AMENDED ORDER

claim of wrongful discharge "there must be a discharge, and that discharge must be 'wrongful.'"

McGanty v. Staudenraus, 321 Or. 532, 551 (1995) (internal citation omitted). Because plaintiff's

termination is undisputed, analysis of that element is unnecessary.

Under Oregon common law, an employer may discharge an employee at any time, for any

reason, unless doing so violates a contractual, statutory, or constitutional requirement. Patton v.

J.C. Penney Co., 301 Or. 117, 120 (1986). However, Oregon recognizes the common-law tort of

wrongful discharge as a narrow exception to the at-will employment doctrine. *See* Sheets v.

Knight, 308 Or. 220, 230-31 (1989). Oregon courts have recognized two circumstances where

the exception is applicable: (1) an employee is discharged for exercising a job-related right that

reflects an important public policy, and (2) an employee is discharged for fulfilling a public duty

or fulfilling a societal obligation. Babick v. Oregon Arena Corp., 333 Or. 401, 407 (2002)

(internal citations omitted). Examples of the first category include discharge for resisting sexual

harassment by a supervisor, Holien v. Sears, Roebuck, & Co., 298 Or. 76 (1984), and filing a

workers' compensation claim, Brown v. Transcon Lines, 284 Or. 597 (1978). Examples of the

second category include discharge for serving on jury duty, Nees v. Hocks, 272 Or. 210 (1975),

reporting patient abuse at a nursing home, McQuary v. Bel Air Convalescent Home, Inc., 69 Or.

App. 107 (1984), and for refusing to sign a false and potentially defamatory statement about a

coworker, Delaney v. Taco Time Int'l, 297 Or. 10 (1984).

Plaintiff appears to rely on the public duty exception, arguing that he was terminated in

retaliation for protected speech about a matter of public concern--the mismanagement of public

funds by a public agency. However, beyond pointing to his November 2008 memorandum and

Oregon's whistleblowing statute ORS 659A.203. plaintiff fails to assert any specifics as to what

Page 20 - AMENDED ORDER

duty he was fulfilling or which statutes or regulations establish his duty. Whether an "important public duty exists" is a question of law. Huber, 235 Or App. at 242. "This court cannot create a public duty, but must find one in constitutional or statutory provisions or case law." Lamson v. Crater Lake Motors, Inc., 346 Or. 628, 637 (2009) (en banc); Love v. Polk Cnty. Fire Dist., 209 Or. App. 474, 483 (2006) (internal citation omitted). Moreover, "[t]he provisions relied on cannot merely express a general public policy; rather, they must encourage specific acts or 'otherwise demonstrat[e] that such acts enjoy high social value.'" Love, 209 Or. App. at 483. "[T]he class of conduct that is deemed to 'enjoy high social value' is very narrowly construed." Id. at 486-87. Furthermore, in whistleblowing situations where a plaintiff is a public employee, plaintiff must show that the complaints were objectively reasonable. Id. at 487-92.

Defendants argue plaintiff's claim fails because (1) he relies upon Oregon's whistleblowing statute to establish a public duty exception, however, his November 2008 report is not a protected disclosure under Oregon's whistleblowing statute; (2) defendants have legitimate, non-retaliatory reasons to terminate plaintiff, which plaintiff has not shown to be pretextual; and (3) plaintiff's wrongful discharge claim is precluded by the existence of a statutory remedy under 42 U.S.C. 1983.

Plaintiff relies exclusively on Oregon's whistleblowing statute as creating his alleged duty to report the mismanagement of public funds by a public agency. Where a statute adequately provides a remedy to the alleged misconduct, an employee does not have an additional claim for wrongful discharge. Walsh v. Consolidated Freightways, Inc., 563 P.2d 1205 (Or. 1977). However, Oregon courts have explicitly found that the legislature did not intend Oregon's whistleblowing statute to supersede common-law claims. Olsen v. Deschutes Cnty., 204 Or.

Page 21 - AMENDED ORDER

App. 7, 14, *rev. denied*, 341 Or. 80 (2006).  Nevertheless, plaintiff's wrongful discharge claim must fail.  As explained above, plaintiff's November 2008 memorandum is not a protected disclosure under Oregon's whistleblowing statute, nor is it speech protected by the First Amendment. Plaintiff has failed to show any causal link between his November 2008 memorandum and termination of his employment.  The only reasonable inference that can be drawn from the facts as shown is that Vial objected to plaintiff not keeping him informed of the official request for information plaintiff received from the Auditor's Office, and allowing him the opportunity to review and comment on the information plaintiff provided.

On these facts, plaintiff has not shown that any public duty or societal obligation to the at will doctrine applies to support his wrongful discharge claim.  Thus the court need not address defendants' remaining arguments.  Therefore, defendants' motion for summary judgment as to plaintiff's wrongful discharge claim is GRANTED and plaintiff's third claim is dismissed.

## IV.  Plaintiff's First Claim:  Breach of Contract

Plaintiff alleges defendant Jackson County breached an implied-in-fact contract governing his employment by terminating him without cause.  The County counters that (1) plaintiff was an at-will employee, and (2) even if plaintiff could only be terminated for-cause, the County had cause to terminate his employment.

## A.  Whether plaintiff was an "at-will" employee

Plaintiff concedes that the default standard in Oregon for terminating a public employee is "at will."  *E.g.*, Brunick v. Clatsop Cnty., 204 Or. App. 326, 333 (2006) (*citing* ORS 204.601). However, plaintiff argues his "at-will" employment status was modified by oral promise or agreement with the County, as evidenced by five asserted facts: (1) the County did not have an

at-will employment policy when he was hired; (2) he was not told he was an at-will employee when he was hired; (3) he was told he would only be terminated for cause when he was hired; (4) these representations were made by agents of the County with the authority to create a binding contract; and (5) although he signed a written acknowledgment of the County's at-will policy, he received no consideration for his changed employment status, therefore it is unenforceable.

Whether an enforceable contract exists is a question of law. Pereira v. Thompson, 230 Or. App. 640, 664 (2009) (*citing* Dalton v. Robert Jahn Corp., 209 Or. App. 120, 131 (2006)), *rev. denied*, 342 Or. 416 (2007). In Oregon, the courts determine whether a contract exists using a standard of objective intent, measured by whether a reasonable person would construe a promise from the words and acts of the other. Wooton v. Viking Distrib. Co., Inc., 136 Or. App. 56, 59 (1995) (*citing* Real Estate Loan Fund v. Hevner, 76 Or. App. 349, 354 (1985)). The parties have not provided any Oregon case deciding a claim for breach of employment contract in a public employment context, and the court has not found any such authority. Because Oregon courts have applied the principles of private employment case law to cases involving public employment, *see, e.g.*, Maben, 54 Or. App. at 803 (applying the principles of a private employment case, Yartzoff v. Democrat-Herald Publishing Co., 281 Or. 651 (1978), to a public employment case), the court therefore the court looks to Oregon cases deciding breach of employment contract claims in private employment.

The County argues plaintiff is charged with constructive knowledge of his statutory "at-will" employment status.[4] The County also disputes whether plaintiff was told he could only be

---

[4] Citing Holdner v. Columbia County, 123 Or. App. 48, 52-53 (1993); Baker v. Deschutes County, 10 Or. App. 236, 240 (1972). These cases do not involve employment contract claims, and the court does not find them to be applicable or persuasive authority here.

terminated "for cause," pointing out that neither plaintiff nor either of his supervisors, Mr. Lloyd and Mr. Ledward, could recall the substance of the alleged conversations. Even if he *was* told he could only be terminated for cause, the County argues that "casual or unauthorized comments" by plaintiff's supervisors are insufficient to create a reasonable expectation that he could only be terminated "for cause."

The County raises several additional arguments, however, the court does not examine them here. Oregon case law is clear that oral promises may support a claim for breach of contract. McPhail v. Milwaukie Lumber, 165 Or. App. 596, 600-01 (2000) (a written agreement stating employment is "at will" does not eliminate a permanent employment agreement established by oral promises and conduct of the parties); Crampton v. Harmon, 20 Or. App. 676, 685-86 (1975) ("an employee told he or she will only be discharged 'for cause' is entitled to expect that employment is permanent unless or until the employer can prove 'cause' for termination"); Koeping v. Tri-County Metro. Transp. Dist. of Oregon, 120 F.3d 998, 1002 (9th Cir. 1997).[5] The existence of an oral contract and its terms are issues of fact not appropriately determined at the summary judgment stage. Federal Rule of Civil Procedure ("FRCP") 56(c); Bahn v. NME Hosp's, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991) (a party is entitled to summary judgment only if the record shows there is no genuine issue as to any material fact). The disputed question of fact regarding whether plaintiff was told he could only be terminated for cause precludes summary judgment on whether an implied-in-fact contract exists and its terms.

---

[5] Defendant cites Butler v. Portland General Electric Co., 748 F.Supp. 783, 792 (D. Or. 1990), *aff'd sub nom* Flynn v. Portland General Electric Co., 958 F.2d 377 (9th Cir. 1992), for the proposition that a supervisor's comments are insufficient. However, Butler is inapposite; there, the plaintiffs alleged claims of age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621, *et seq.*, not for breach of contract.

**B. The County had cause to terminate plaintiff**

The County argues that even if plaintiff was not an "at will" employee, it is entitled to summary judgment because plaintiff's repeated violations of the County's vehicle use policy and theft of firewood from C-B Park constitutes cause sufficient to support his termination.

An employment contract providing that an employee will only be terminated "for cause" is customarily interpreted to mean that the employer cannot arbitrarily discharge the employee. Simpson v. Western Graphics Corp., 53 Or. App. 205, 208-09 (1981), *aff'd*, 293 Or. 96 (1982). To satisfy this standard, the court need only find that there was substantial evidence to support the employer's decision and that the employer believed that evidence and acted in good faith in discharging the worker. Id. at 211.

Here, defendant has shown that in November 2006 and again in July 2008, plaintiff received written warnings for failing to comply with the County's vehicle use policy, and defendant determined plaintiff had committed a third violation of the policy in December 2008. Plaintiff had received thorough training on the policy, and had voiced his opposition to the policy on several occasions. Plaintiff's supervisors viewed his conduct as an ongoing practice of disregarding County policies, and had twice warned plaintiff that his failure to comply with County policy could result in further disciplinary action up to and including termination. Furthermore, the County found that plaintiff had violated a separate policy by taking firewood from C-B Park without payment or permission, and that this conduct compromised plaintiff's ability to discharge his duties as Parks Program Manager by damaging the already acrimonious relationship between plaintiff and GACDC.

In summary, the County believed that plaintiff displayed an ongoing disregard for both

County policies and his responsibilities as a manager to be a role model for his employees, and persisted in this conduct despite the County's best efforts to identify the wrongful behavior and provide corrective counseling. On these facts, the court finds substantial evidence to support the County's decision to terminate plaintiff's employment, and that the County believed that evidence and acted in good faith in discharging plaintiff.

### Conclusion

A genuine issue of material fact precludes summary judgment on whether plaintiff was an "at will" employee. However, assuming without deciding that plaintiff could only be terminated for cause, the County has shown that its decision to terminate plaintiff's employment is supported by substantial evidence, that it justifiably believed in the accuracy of that evidence, and that it acted in good faith in discharging plaintiff. Therefore, defendants' motion for summary judgment as to plaintiff's breach of contract claim is GRANTED, and plaintiff's first claim is dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is GRANTED in its entirety.

DATED this _____ day of November, 2010

_____
MARK D. CLARKE
United States Magistrate Judge

Page 26 - AMENDED ORDER